IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MARLON L. WATFORD,                     )
                                       )
            Plaintiff,                 )
                                       )
vs.                                    )      Case No.   15-cv-0567-MJR-SCW
                                       )
OFFICER WOOLEY,                        )
OFFICER NEW,                           )
SERGEANT RICHARDS,                     )
RICHARD HARRINGTON,                    )
KIMBERLY BUTLER, and                   )
JOHN R. BALDWIN,                       )
                                       )
            Defendants.                )

## MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

### I.   INTRODUCTION

Marlon Watford (Plaintiff) — an inmate confined within the Illinois Department of

Corrections — brought this lawsuit pursuant to 42 U.S.C. § 1983 and the Religious Land

Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. 2000cc-1, et seq.   "Section

1983 provides a cause of action against state actors who violate an individual's rights

under federal law."   *Filarsky v. Delia,* **566 U.S. 377, 380 (2012).**   RLUIPA provides that

"no government shall impose a substantial burden on the religious exercise of a person

residing in or confined to an institution," unless the government demonstrates that

imposition of the burden furthers a compelling government interest and is the least

restrictive means of doing so.   *Knowles v. Pfister,* **829 F.3d 516, 519 (7th Cir. 2016),**

*quoting* 42 U.S.C. 2000cc-1(a).

In the case at bar, Plaintiff claims that prison officials violated his rights when they caused the prison commissary to cease selling certain toiletry products and when they instituted a number of policies he terms financially oppressive. On threshold review of Plaintiff's second amended complaint, the undersigned noted (Doc. 24) that Plaintiff's complaint stemmed from conditions at Menard Correctional Center which Plaintiff contends substantially burden his practice of the Islamic faith. For instance, Plaintiff alleged that when the Menard commissary stopped selling certain deodorant, powder, and hygiene products, he was not able to maintain the cleanliness mandated by his faith. And when Menard increased the price of copies in the law library, capped the amount of spending per commissary visit, and required prisoners in segregation over 30 days to ship personal items home, those policies burdened Plaintiff, he alleged.

The threshold review Order concluded that Plaintiff could proceed with Count 1 of his complaint against Defendants Wooley, New, Richards, Harrington, and Butler, and that he could proceed with Count 2 against Harrington, Butler, and Baldwin. Other claims were severed out or dismissed. Wooley, New, Richards, Harrington, Butler, and Baldwin are collectively referred to as Defendants where appropriate herein.

The case comes now before the Court on Defendants' motion for summary judgment and supporting brief and exhibits (Docs. 39-40). Defendants argue that Plaintiff failed to exhaust his administrative remedies as to some of his claims as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. 1997e(a). Plaintiff

responded in opposition to the motion (Doc. 47), and the motion is ripe for disposition. For the reasons discussed below, Defendants' motion for summary judgment is granted in part and denied in part.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

As discussed in greater detail below, a "prisoner cannot bring a cause of action under federal law regarding prison conditions 'until such administrative remedies as are available are exhausted.'"   *Hernandez v. Dart*, **814 F.3d 836, 841 (7th Cir. 2016),** *quoting* **42 U.S.C. 1997e(a).**   Defendants maintain that Plaintiff failed to properly exhaust all administrative remedies before filing this lawsuit.   At issue here are three grievances filed by Plaintiff (Doc. 40, p. 4; Doc. 47, p. 3).

First, Plaintiff filed a grievance on **March 18, 2013**, wherein he complained that on a March 5, 2013 visit to the commissary, he learned that baby powder was no longer being sold at the commissary (Doc. 40-3, p. 6).   The grievance indicates that Plaintiff needs the baby powder to combat body odor, to prevent jock itch, and to maintain freshness and dryness after showering or washing up (*id.* at 7).   In the grievance, Plaintiff contended that this deprivation constituted cruel and unusual punishment. Plaintiff does not reference religion in this grievance (*id.* at pp. 6–7).

Next, in a grievance filed on **December 21, 2013,** Plaintiff complained about the discontinuation of petroleum jelly sales at the commissary (Doc. 40-3, p. 2).   Plaintiff indicated that he is allergic to lotion and unable to treat his dry skin and minor abrasions without petroleum jelly (*id.* at 3).   Plaintiff also states that the lotion contains ingredients

(like D&C Red 33) prohibited by his Muslim faith (*id.*).    First, a counselor responded to the December 21st grievance on February 13, 2014, indicating that the selection of items available for sale at the prison commissary is not a grievable issue (*id.*).    Next, the Administrative Review Board (ARB) responded on May 2, 2014 that:    (a) Plaintiff failed to provide a grievance officer's response and the chief administrative officer's response to the ARB, (b) the issue was a no-merit issue, (c) the ARB previously addressed the issue, and (d) Plaintiff should contact the prison healthcare unit "for other options" (*id.* at 1).

The third grievance was filed **<u>January 31, 2014</u>**.    Plaintiff grieved the rise in the cost of photocopies from 5 cents to 10 cents (a price hike that was announced on September 11, 2013) (Doc. 40-4, p. 1).    In grieving the copy cost increase, Plaintiff also complained about the $10 inmate stipend (a fixed rate wage for unemployed inmates) that, according to Plaintiff, has not increased in 75 years and thus has not kept pace with commissary price inflation (*id.*).    The remainder of the January 31 grievance is devoted to complaints about the higher photocopy costs; there is no reference to the price increase being related to his religious beliefs (*id.*).    The record before the Court contains a counselor's response and a response from the ARB (*id.* at 1, 2).    The ARB denied the grievance, merely indicating that it was out of time.

Plaintiff filed this suit on May 14, 2015.    On October 5, 2015, he filed a 310-page amended complaint with exhibits.    Counsel was recruited to help Plaintiff filed a complaint that complied with the requirements of Federal Rule of Civil Procedure 8

(Doc. 15). Counsel filed the operative complaint -- the March 28, 2016 second amended complaint on which threshold review as conducted in a May 25, 2016 Order (Doc. 24). That Order concluded that Plaintiff had sufficiently pled the following cognizable claims (Doc. 24, pp. 4-8):

**Count 1:** Defendants Wooley, New, Richards, Harrington, and Butler violated the First Amendment, Eighth Amendment, and RLUIPA when they caused the commissary to cease selling baby powder, cocoa nut hair grease, petroleum jelly, and "Ban" brand deodorant.

**Count 2:** Defendants Harrington, Butler, and Baldwin violated the First Amendment, Eighth Amendment, and RLUIPA when a number of financially oppressive policies were instituted.

Plaintiff alleges that he is obligated to maintain cleanliness and "radiant looking skin" as part of his religious faith (*id.* at 2) (internal quotations omitted). He alleges that the removal of baby powder, cocoa nut hair grease, petroleum jelly, and "Ban" brand deodorant violates his religious rights (Doc. 24, pp. 2–3).

Additionally, Plaintiff alleges that he suffered financial oppression due to the rise of prices of copies in the law library, a prohibition that inmates not spend more than $75 - $100 at the commissary at one time, a requirement that prisoners in segregation for over 30 days ship their personal items home, and the fact that Defendant Harrington maintained a $10 stipend even when the cost of copies was increased 100% (*id.* at 3). Plaintiff claims that his religious beliefs are violated by this oppression due to a tenant of the Islamic faith that requires one to be free from financial oppression (*id.*).

## III.  APPLICABLE LEGAL STANDARDS

### A.  <u>Summary Judgment Motions</u>

Summary judgment is proper only if the admissible evidence considered as a whole shows there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law.  *Dynegy Mktg. & Trade v. Multi Corp.*, 648 F.3d 506, 517 (7th Cir. 2011), *citing* FED. R. CIV. P. 56(a).  The party seeking summary judgment bears the initial burden of showing -- based on the pleadings, affidavits, and/or information obtained via discovery -- the lack of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  After a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986), *quoting* FED R. CIV. P. 56(e)(2).

A fact is material if it is outcome determinative under applicable law.  *Anderson*, 477 U.S. at 248; *Ballance v. City of Springfield, Ill. Police Dep't*, 424 F.3d 614, 616 (7th Cir. 2005).  A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.  "A mere scintilla of evidence in support of the nonmoving party's position is not sufficient; there must be evidence on which the jury could reasonably find for the non-moving party."  *Harris N.A. v. Hershey*, 711 F.3d 794, 798 (7th Cir. 2013).  On summary judgment, the district court construes the facts and draws the reasonable

inferences in favor of the non-moving party. *Cole v. Board of Trustees of Northern Illinois University,* 838 F.3d 888, 895 (7th Cir. 2016).

Generally, a district court's role on summary judgment is not to evaluate the weight of the evidence, judge witness credibility, or determine the truth of the matter, but only to determine whether a general issue of triable fact exists. However, a different standard governs summary judgment motions on the issue of exhaustion. *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.,* 528 F.3d 508, 512 (7th Cir. 2008).

A motion for summary judgment based upon failure to exhaust administrative remedies typically requires a hearing to determine contested issues about exhaustion, and the judge may make limited findings of fact at that time. *Pavey v. Conley,* 544 F.3d 739, 742 (7th Cir. 2008). The case may proceed on the merits only after contested factual issues regarding exhaustion are resolved. *Id.* But not all issues relating to the defense of failure to exhaust administrative remedies must be decided by a jury. *Pavey,* 544 F.3d at 740-41. In the case at bar, the exhaustion issue presents a purely *legal* question, so no hearing is required, and the undersigned may resolve the issue.

### B. Exhaustion under the Prison Litigation Reform Act

Lawsuits brought by prisoners are governed by the PLRA, 42 U.S.C 1997e, which requires that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until … administrative remedies as are available are exhausted." **42 U.S.C. 1997e(a).**

Exhaustion is a condition precedent to suit in federal court, so the inmate must exhaust *before* he commences his federal litigation. He cannot exhaust while his lawsuit is pending. *See Perez v. Wisconsin Department of Corr.*, **182 F.3d 532, 535 (7th Cir. 1999);** *Dixon v. Page*, **291 F.3d 485, 488 (7th Cir. 2002).** If the inmate fails to exhaust before filing suit in federal court, the district court must *dismiss* the suit. *See Jones v. Bock*, **549 U.S. 199, 223 (2007);** *Burrell v. Powers*, **431 F.3d 282, 284-85 (7th Cir. 2005).**[1]

The law of this Circuit requires strict adherence to the PLRA's exhaustion requirement. "Unless a prisoner completes the administrative process by following rules the state has established for that process, exhaustion has not occurred." *Pozo v. McCaughtry*, **286 F.3d 1022, 1025 (7th Cir. 2002).** This includes the filing of "complaints and appeals in the place, and at the time, the prison's rules require." *Id.* at 1025. *See also Dole v. Chandler*, **438 F.3d 804, 809 (7th Cir. 2006) ('This circuit has taken a strict compliance approach to exhaustion").** If the prisoner fails to comply with the established procedures, including time restraints, the court may not consider the claims. *Pavey v. Conley*, **663 F.3d 899, 903 (7th Cir. 2011);** *Jones*, **549 U.S. at 211,** *citing Porter v. Nussell*, **534 U.S. 516, 524 (2002).** But the PLRA's plain language makes clear that an inmate is required to exhaust only those administrative remedies that are available to him. **42 U.S.C. 1997e(a).**

---

[1] Although *dismissal* is the procedural step the district court takes if a plaintiff failed to exhaust before filing suit, exhaustion most often is raised via summary judgment motion, so that the Court can consider evidence "outside the pleadings," such as affidavits, grievances, responses, appeals, and related documentation. *See* FED. R. CIV. P. 12(d).

The purpose of the exhaustion requirement is two-fold. First, it gives the prison officials the chance to address the prisoner's claims internally, before litigation becomes necessary. ***Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006); *Woodford v. Ngo*, 548 U.S. 81, 89-90 (2006).** Second, it "seeks to reduce the quantity and improve the quality of prisoner suits." ***Porter*, 534 U.S. at 524. *See also Booth v. Churner*, 532 U.S. 731, 737 (2001) (exhaustion requirement will help "filter out some frivolous claims.").**

Because exhaustion is a prerequisite to filing a suit, a prisoner must wait to commence litigation until he has completed the established process and may not file in anticipation of administrative remedies soon being exhausted. ***Perez*, 182 F.3d at 535, *citing* 42 U.S.C 1997e(a); *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004).** A suit filed prior to exhaustion of available remedies will be dismissed even if the remedies become exhausted *while* the suit is pending. ***Perez*, 182 F.3d at 535.**

The affirmative defense of failure to exhaust depends on whether an inmate plaintiff has fulfilled the PLRA's exhaustion requirement, which in turn depends on the prison grievance procedures set forth by the state of incarceration. ***See Jones*, 549 U.S. at 218.** As a prisoner in an Illinois institution, Plaintiff was required to follow the grievance procedures of the Illinois Department of Corrections (IDOC).

**C.**   **Exhaustion under Illinois Law**

In Illinois, the process for exhausting administrative remedies is set forth in the IDOC's Grievance Procedures for Offenders. **20 Ill. Adm. Code 504.810.** The procedures first require inmates to speak with their counselor about the issue or concern.

**20 Ill. Admin. Code 504.810(a).** If unable to resolve a dispute with the counselor, the prisoner may file a written grievance with the Grievance Officer within sixty days of discovery of the dispute. *Id.* The grievance should include "factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint…[or] as much descriptive information about the individual as possible." **20 Ill. Admin. Code 504.810(b).**

The grievance officer shall review the grievance and report findings and recommendations to the Chief Administrative Officer (CAO). **20 Ill. Adm. Code 504.830(d)**. The prisoner then has the opportunity to review the CAO's response. *Id.* If the prisoner is unsatisfied with the institution's resolution of the grievance, he may file an appeal to the Director through the Administrative Review Board within 30 days of the CAO's decision. **20 Ill. Adm. Code 504.850.** Completion of this process exhausts a prisoner's administrative remedies.

In emergencies, the Illinois Administrative Code also provides that a prisoner may request his grievance handled on an emergency basis by forwarding the grievance directly to the CAO. **20 Ill. Adm. Code 504.840.** The grievance may be handled on an emergency basis if the CAO determines that there exists a substantial risk of imminent personal injury or other serious or irreparable harm to the offender. *Id.* The request to have a grievance handled on an emergency basis may also be appealed to the ARB. **20 Ill. Adm. Code 504.850**.

## IV. ANALYSIS

Defendants assert that Plaintiff failed to fully exhaust all three grievances. Defendants do not dispute that Plaintiff exhausted the January 31st grievance or the March 18th grievance. They argue that he failed to exhaust the grievance filed on December 21, 2013. They assert that this failure is evidenced by the lack of responses from the grievance officer and chief administrative officer (CAO) sent to the ARB. The undersigned disagrees. The nature of the ARB's response to the December 21 grievance resulted in Plaintiff having exhausted that grievance.

If prison officials address a procedurally deficient grievance on the *merits*, then the inmate is deemed to have exhausted. ***See Conyers v. Abitz*, 416 F.3d 580, 584 (7th Cir. 2005) ("Failure to comply with administrative deadlines dooms the claim except where the institution treats the filing as timely and resolves it on the merits.")**. ***See also McDaniel v. Meisner*, 617 F. App'x 553, 557 (7th Cir. 2015) ("[An inmate's] failure to exhaust his administrative remedies is forgiven, i.e., the exhaustion requirement is satisfied, if prison officials ignore a grievance's administrative failings and address its merits.")**.

Although the ARB's response to Plaintiff's December 21 grievance indicated that Plaintiff failed to provide responses from the grievance officer and CAO (a procedural shortcoming), it also deemed the grievance a "no merit" issue. Furthermore, the ARB directed Plaintiff to contact the healthcare unit for other options. The response and direction addressed the merits of Plaintiff's grievance about the lack of petroleum jelly.

Thus, regardless of whether Plaintiff completed all of the proper procedural steps, the fact that the ARB addressed the December 21 grievance on the merits renders the exhaustion requirement satisfied.

Since Plaintiff exhausted all three of the grievances at issue, the next question is whether the content of the grievances is sufficient to exhaust the *claims* raised in the second amended complaint. The Court first turns to the December 21 grievance.

In that grievance, Plaintiff complained of the lack of availability of petroleum jelly at the commissary and stated that he needed petroleum jelly for dry skin and abrasions because of his allergy to lotion (which was available). He also indicated that certain ingredients in the lotion render the lotion unlawful for him to use under his Muslim faith. The grievance mentions no other items being unavailable at the commissary.

The purpose of a grievance is to "give prison administrators an opportunity to address a shortcoming." ***See Glick v. Walker*, 385 F. App'x 579, 582 (7th Cir. 2010), *citing Jones*, 549 U.S. at 218.** And IDOC grievance procedures require a grievance to include factual details from *each aspect* of the offender's complaint, **20 Ill. Adm. Code 504.830(d).** The December 21 grievance exhausts Plaintiff's Eighth Amendment and religious claims in Count I only for the absence of petroleum jelly at the commissary.

The main subject of the January 31 grievance is the five-cent increase in the cost of copies—though Plaintiff also takes issue with the $10 inmate stipend. Plaintiff does not mention any of the other "financially oppressive" policies referenced in his complaint. A grievance the subject of which is an increase in the cost of copies does not place prison

administrators on notice of other alleged shortcomings regarding financial policies such as a purchase cap at commissary and a requirement for inmates in segregation to ship personal items home. The January 31 grievance only exhausted Plaintiff's claims regarding the copy fee increase and the $10 stipend. And the January 31 grievance exhausts those claims only to the extent they arise from the Eighth Amendment. The copy fee and stipend claims are not exhausted to the extent they are based on Plaintiff's religious rights. The January 31 grievance contains no reference to Plaintiff's religion.

Though the PLRA does not require an inmate to complete a grievance as if it were a civil complaint, *Johnson v. Johnson*, **385 F.3d 503, 522 (5th Cir. 2004) ("We are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation."),** it still must provide prison officials with enough notice to allow them to adequately address the shortcomings alleged by the inmate.

The nature of a religious complaint in the prison setting is materially different from other, more general, complaints. Depending on the situation, a grievance regarding an issue relating to an inmate's religion may be granted, where a substantially similar grievance with no religious aspect would not be granted. For example, a grievance where an inmate merely complains that he does not want X food for breakfast and asks the prison to provide him Y food is not likely to be granted. On the other hand, a grievance would be more likely to be granted where the inmate indicates that he

wants Y food instead of X food for breakfast, because his religion mandates that he eat Y food and prohibits him from eating X. The latter grievance sufficiently places prison officials on notice of the religious nature of the inmate's complaint, where the former clearly does not.

Simply put, prison officials often must respond in a different manner when grievances are religious-based. Therefore, in order to adequately respond to such a grievance, the grievance itself must indicate that the issue is related to the inmate's religion. The January 31 grievance does not do that and does not exhaust any claims to the extent they are based on Plaintiff's religious beliefs.

Finally, the March 18 grievance only exhausts claims relating to the lack of baby powder being sold at the prison commissary. Because the grievance only references baby powder, it does not exhaust claims relating to any *other* items unavailable at the commissary. Moreover, the grievance makes no reference to Plaintiff's religion. So the grievance does not exhaust any claims based on Plaintiff's religious beliefs. The March 18 grievance merely exhausts Plaintiff's claim arising under the Eighth Amendment relating to the lack of baby powder.

## V.   Conclusion

Defendants' motion for summary judgment (Doc. 39) is **GRANTED in part and DENIED in part**. As a procedural matter, Plaintiff exhausted the three grievances at issue. The content of the grievances, however, do not cover (exhaust) all of the *claims* Plaintiff has brought in this lawsuit.

The following claims shall go forward:

- Wooley, New, Richards, Harrington, and Butler violated the First Amendment, Eighth Amendment, and RLUIPA when they caused the commissary to cease selling petroleum jelly;

- Wooley, New, Richards, Harrington, and Butler violated the Eighth Amendment when they caused the commissary to cease selling baby powder; and

- Harrington, Butler, and Baldwin violated the Eighth Amendment when they caused the cost of copies to increase from 5 cents to 10 cents and in keeping the inmate stipend at $10.

All other claims are **DISMISSED** *without* **prejudice**.

IT IS SO ORDERED.

DATED August 11, 2017.

s/ *Michael J. Reagan*
MICHAEL J. REAGAN
United States District Judge